IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARROLL (BO) JORDAN,                                    CV. 05-1314-PK
                        Plaintiff,

                                                        FINDINGS AND
                                                        RECOMMENDATION

v.


ECHO RURAL FIRE PROTECTION
DISTRICT #7-403, MERLE GEHRKE,
and TOM ENRIGHT,
                        Defendants.
_____

PAPAK, Magistrate Judge:

        Before this court is defendants' motion for summary judgment (No. 38).  Plaintiff Bo

Jordan ("Jordan") was a volunteer firefighter with the Echo Rural Fire Protection District ("the

District") for fourteen years until he was terminated in March  2005.  Merle Gehrke ("Gehrke")

is the chief of the District, and Tom Enright ("Enright") is assistant chief.  Jordan brings claims

under 42 U.S.C. § 1983, alleging violations of the First Amendment and Fourteenth Amendment,

as well as claims based on ORS 659A.200 for public whistleblowing, ORS 654.001 et seq. for

Page 1 - FINDINGS AND RECOMMENDATION

violations of the Oregon Safe Employment Act, wrongful discharge, and intentional infliction of emotional distress.

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). Defendants filed a motion to dismiss in October 2005, which this court converted to a motion for summary judgment. Subsequently, defendants withdrew their motion. Defendants' motion for summary judgment that is presently before this court is substantially the same as the previously filed motion to dismiss.

For the reasons set forth below, the court recommends that defendants' motion for summary judgment (No. 38) as to plaintiff's claims under state law against the individual defendants (Gehrke and Enright) be granted. This court further recommends granting defendants' motion for summary judgment (No. 38) as to plaintiff's second claim for denial of equal protection and fourth claim for denial of the right to petition the government for redress of grievances. Defendants' motion for summary judgment (No. 38) as to plaintiff's remaining claims should be denied.

LEGAL STANDARD

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); Bahn v. NME Hosp's, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).

The moving party carries the initial burden of proof. The party meets this burden by identifying portions of the record on file which demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the initial burden is

Page 2 - FINDINGS AND RECOMMENDATION

satisfied, the burden shifts to the nonmoving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  Id.

The court must view the evidence in the light most favorable to the non-moving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir. 1982).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976).  The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  Sankovich v. Ins. Co. of N. Am., 638 F.2d 136, 140 (9th Cir. 1981).

## FACTUAL BACKGROUND

Jordan performed services as a volunteer firefighter and first responder with the District from approximately 1991, until he was terminated in March 2005.  Gehrke has been chief of the District since 1997 and, in that capacity, supervised the approximately twenty-four District volunteers, including Jordan.  Enright is the assistant chief of the District.  The Echo Volunteer Fire Department was governed by a constitution which specified that members, i.e. volunteer firefighters, could only be removed "with cause".

During his tenure with the District, Jordan had a confidential medical/psychological condition of which all defendants were aware.  Also during his tenure, Jordan complained to Gehrke and Enright regarding safety issues at the District.  The times and dates of that condition and those complaints are not clear from the record.

The District is composed primarily of volunteers and one employee, Ms. Furness, a

Page 3 - FINDINGS AND RECOMMENDATION

secretary.[1]  Ex. 2 to Smith Decl. (#18).  She is paid regular wages and her hours and duties are under the direction of the District's Board of Directors.  Id.

Volunteers for the District receive $7.00 per hour for emergency services rendered on behalf of the District, and $10.00 per District training session, regardless of the number of hours a session lasts.  The District labels these payments as "expense reimbursements".  Volunteers also receive a $10,000 life insurance policy and reimbursement for required state and district training fees.

The District covers approximately 490 square miles within two counties.  Volunteers must travel to and from the District's three fire stations.  One station is located in Echo, and the other two are located approximately twelve and thirteen miles from Echo respectively. Volunteers must travel from any place a volunteer happens to be at the time of an emergency call directly to the scene of the incident.  Volunteers incur expenses as a result of travel.  Volunteers may also lose income in the course of responding to District emergency calls and incur expenses while performing services for the District, including the costs of personal vehicle maintenance and ruined clothing.

The District does not itemize expenses for its volunteers.  Payment is calculated based on the time the volunteer calls in responding to an emergency or the time the volunteer arrives at the station or at the scene of an incident, whichever is earlier.  The period for which the volunteer is paid ends when the emergency situation is resolved.  For training sessions, which occur twice per month, volunteers are paid a flat rate.

For the twelve month period ending with his termination in March 2005, the District paid

_____

[1]Defendants allege that the District is composed entirely of volunteers.

Jordan the total sum of $849.00:  $240 for attending two training sessions per month, and $609

in hourly payment for responding to sixty-seven emergency calls.  The District did not withhold

federal or state taxes from the payment.

From March 8, 2005 to March 15, 2005, the Oregon Occupational Safety and Health

Division ("OR-OSHA") investigated the District for unsafe conditions.  During the investigation,

Ken Heehn ("Heehn") of OR-OSHA spoke with Jordan, Gehrke and Enright as well as others.

Gehrke told Heehn that Gehrke believed Jordan had a chemical imbalance for which Jordan

received medical treatment in Portland.  Jordan told David Clark ("Clark"), a volunteer member

of the District, that Jordan had complained about safety violations to OR-OSHA in the past,[2] and

Clark relayed this information to Gehrke.  Gehrke invited Clark to a Board of Directors meeting

to discuss Jordan.  Clark, who did not usually attend such meetings, attended the Board meeting

on March 16, 2005.  At the meeting, Clark told the Board that Jordan had called OR-OSHA and

instigated the recently completed investigation.  The Board was aware that the District would be

receiving a fine from OR-OSHA as a result of that investigation.  At the meeting, Gehrke

recommended removing Jordan and a motion was made to terminate him.  On March 17, 2005,

the District advised Jordan of his termination.

On April 11, 2005, OR-OSHA issued a Citation and Notification of Penalty to the

District, and fined the District $950.00 based on three violations it found during the March

investigation.

---

[2]Jordan has not alleged that OR-OSHA's March 2005 investigation of the District was a direct result of his contact with the agency.

Page 5 - FINDINGS AND RECOMMENDATION

ANALYSIS

As an initial matter, the court notes that defendants are not moving for summary judgment against two of Jordan's eight claims: the first claim for relief, alleging termination in retaliation for exercising the right to freedom of speech, and the eighth claim for relief, alleging intentional infliction of emotional distress.

Second Claim: Equal Protection

Jordan's second claim alleges that the District denied him equal protection of law under the Fourteenth Amendment. In his complaint, Jordan fails to specify the factual or legal basis of his claim. See Complaint at ¶ 29.[3] To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. Serrano v. S.W. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), cert. denied, 543 U.S. 825 (2004), citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Id., citing Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original). To avoid summary judgment, Jordan "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence" that a discriminatory decision was motivated by Jordan's status as the member of a protected class. Id., citing Bingham v. City of Manhattan Beach, 329 F.3d 723, 732 (9th Cir. 2003). Protected classes may be based on race, gender, national origin, age, and disability,

---

[3]Under his Freedom of Speech claim, Jordan alleges that "Defendant's acts were part of a pattern and practice of discrimination against disabled persons". See Complaint at ¶ 26. But Jordan does not allege that he was disabled or include a claim under the Americans with Disabilities Act, although the caption of Jordan's complaint refers to the ADA.

among others.  See RK Ventures v. City of Seattle, 307 F.3d 1045, 1055-56 (9th Cir. 2002) (equal protection claim can be shown only where the plaintiff is a member of a protected group, such as a racial minority, where plaintiff has been discriminated against by reason of his association with or advocacy for such a minority, or as a result of a publicly applicable law).

In his responsive briefing and at oral argument, Jordan attempted to clarify his equal protection claim.  Jordan contends that he has alleged a "confidential medical/psychological condition" and membership in two protected classes:  "(1) Individuals with confidential medical/psychological conditions; (2) Individuals who have cooperated in an OR-OSHA investigation and made internal complaints regarding unsafe and/or unhealthy working conditions."  Pl's Response at 26.  These allegations, however, are insufficient to state an equal protection claim in that Jordan has not alleged membership in a legitimate protected class. Jordan has suggested that he may be disabled, but provides no supporting evidence for that inference in his response to defendants' motion.  Nor is there any allegation that his termination was motivated by his disability.  Because Jordan fails to provide evidence that he was a member of a protected class and that the District discriminated against him because of that status, defendants' motion for summary judgment against Jordan's second claim for denial of equal protection should be granted.

Third Claim:  Due Process

Jordan alleges that the district deprived him of a property interest without due process of law in terminating its relationship with him.  The District argues that Jordan is not an employee and, relying on Hyland v. Wonder, 972 F. 2d 1129 (9th Cir. 1992), cert. denied, 508 U.S. 908 (1993), claims that only an employee and not a volunteer of a public entity may state a claim for

denial of due process upon termination.  <u>Hyland</u> does not stand for that proposition,[4] nor can it.
It is clearly established that an individual is entitled to due process before being deprived of a
benefit to which he or she has a property interest.  See <u>Cleveland Bd. of Educ. v. Loudermill,</u>
470 U.S. 532, 541-42 (1985).  In the employment context, a plaintiff must prove both that he had
a property interest in continued employment and that he was terminated without a constitutional
minimum of due process.  <u>See id.</u>  Whether Jordan had a property interest in his continued
relationship with the District is determined by the nature of his position, not the terminology that
applies to it.  <u>See Gratsch v. Hamilton County Sheriff's Dept.,</u> 91 F. Supp. 2d 1160, 1174-75
(S.D. Ohio 2000).  "[A] person's interest in a benefit is a property interest for due process
purposes if there are such rules or mutually exclusive understandings that support his claim of
entitlement to the benefit." <u>Perry v. Sindermann,</u> 408 U.S. 593, 601 (1972).  Here,  plaintiff
argues that there are material facts that must be resolved to determine whether, at the time he
was terminated, he had a property interest created by state law or the District's constitution.
Defendants concede that they did not provide Jordan with due process prior to his termination
but claim he had no property interest in the position.

Plaintiff does not identify any provision of Oregon statutes indicating that a volunteer
firefighter has a property interest in his position nor does he point to any section from which
such an interest may be inferred.  Based on the record before me, I cannot find that Jordan had a
right to due process upon termination rooted in state law.

---

[4]In <u>Hyland,</u> the court affirmed a district court's finding that plaintiff's status as a volunteer
with a city juvenile probation department did not amount to a constitutionally protected property
interest because plaintiff failed to identify a mutually explicit understanding on termination
conditions.  Here, Jordan has identified such an understanding in the District's constitution.

The District's constitution provides that members can only be removed "[u]pon recommendation, with cause, from the Fire Chief."  Exh. A-5 to Smith Decl.  Even if Jordan had no property interest created in state law, the District's constitution restricted its otherwise unlimited authority to terminate an at will employee.  See Simpson v. Western Graphics, 293 Or. 96, 98-100 (1982). The meaning of the "cause" requirement, its method of determination and its application to Jordan's termination all raise questions of material fact that preclude summary judgment in this case.

Based on the foregoing, this court recommends that defendants' motion for summary judgement on plaintiff's third claim for relief be denied.

Fourth Claim:  Right to Petition for Redress of Grievances

Jordan's fourth claim alleges that the District denied his First Amendment right to petition the government for redress of grievances.  Jordan argues that his termination was retaliation for his complaints to OR-OSHA about safety violations at the District and, as such, impeded his right to petition the government.  The right to petition extends to all departments of the government.  California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).  The right to petition the government for redress of grievances protects a person's right to complain to the government that the government has wronged him,  Jones v. Brown, 300 F. Supp. 2d 674 (N.D. Ind. 2003), and protects a citizen's right of access to governmental mechanisms for the redress of grievances, including the right of access to courts for that purpose.  Livingstone v. North Belle Vernon Borough, 91 F.3d 515 (3rd Cir. 1996), cert. denied, 520 U.S. 1142 (1997).  The right to petition is infringed when "a governmental actor directly interferes with the right to present a grievance, or imposes restrictions on the ability to present a grievance that have a 'chilling' effect on a citizen's exercise of that right."  Lafreniere v. Univ. of Cal.

Page 9 - FINDINGS AND RECOMMENDATION

Regents, No. C 01-3115 MMC, 2001 WL 1180642, at *1 (N.D. Cal. Oct. 1, 2001), citing

O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996).

      The District argues that Jordan's conduct in speaking to and cooperating with an OR-

OSHA investigator does not constitute a petition for redress of grievances.  This court agrees.

Jordan argues that his conduct was protected if he sought government assistance in resolving,

participated with an investigation intended to resolve, or filed an internal grievance relating to, a

matter of public concern.  However, Jordan's activities do not rise to the level of conduct

required of a citizen to trigger the protections of the First Amendment.

      The cases cited by Jordan all involve a more direct form of citizen appeal and

participation and do not support his claim.  In Christian Gospel Church, Inc. v. City and County

of San Francisco, 896 F.2d 1221, 1226 (9th Cir.), cert. denied, 498 U.S. 999 (1990), a group of

citizens initiated and engaged in direct action by circulating a petition, testifying before a city

planning commission, and writing letters to the editor opposing a zoning permit application.  See

also Evers v. County of Custer, 745 F.2d 1196, 1204 (9th Cir. 1984) (citizens complained directly

to County Commissioners and attended Commissioners' meetings to protest closing of a county

road).  In Rendish v. City of Tacoma, 123 F.3d 1216, 1220-21 (9th Cir. 1997), cert. denied, 524

U.S. 952 (1998), the court found that a threshold requirement for receiving constitutional

protection under the Petition Clause when an employee initiates an internal employment

grievance is that the employee must be speaking on a matter of public concern.  See also Hunter

v. Heath, 95 F. Supp. 2d 1140, 1149-50 (9th Cir. 1997) (plaintiff who worked as an inmate legal

assistant filing habeas petitions on behalf of other inmates engaged in activity with constitutional

protection).  Here, Jordan merely cooperated with an ongoing agency investigation, but his

conduct in doing so, even viewed in the light most favorable to him, was too passive and

Page 10 - FINDINGS AND RECOMMENDATION

attenuated to constitute petitioning the government for redress of grievances.  He does not allege that the OR-OSHA investigation was a direct result of his contact with the agency.  Because Jordan was not engaged in any activity protected by the First Amendment right to petition, this court recommends that defendants' motion for summary judgment on Jordan's fourth claim for relief be granted.

Claims Resting on Jordan's Status as an "Employee"

Jordan's fifth, sixth, and seventh claims, and the District's motion for summary judgment thereon, all revolve around the question of whether Jordan's status as a volunteer firefighter with the District precludes him from being considered an "employee" as a matter of law.  The District argues that Jordan did not receive wages and, therefore, was not an employee of the District. The District characterizes all payments made to Jordan and other volunteers, including payment for travel, lost income, private vehicle maintenance, gasoline and ruined clothing, as reimbursement for expenses incurred.  To avoid the bookkeeping requirements of itemizing expenses for each volunteer, the District reimbursed volunteers on a flat-rate basis:  $7.00 per hour for emergency service, and $10.00 per training session, which were conducted twice a month.  The District argues that these expense reimbursements do not cover the volunteers' actual expenses, and that volunteers cannot profit from these reimbursements.[5]  Jordan argues that the District's characterization of the payments to Jordan as expense reimbursements is not dispositive on the issue of his status with the District.  Payment Jordan received exceeded federal minimum wage requirements, and since he was compensated based on hours worked, Jordan argues a reasonable factfinder could conclude that he was a District employee.

---

[5]In the year prior to his termination, Jordan received total reimbursement in the amount of $849.00:  $609 related to responding to emergency calls and $240 for training sessions.

Page 11 - FINDINGS AND RECOMMENDATION

The District contends that because "volunteer firefighters" are defined under Oregon law as a separate entity, see ORS § 652.050 (3), they cannot be "employees" and do not meet the statutory definition of being "employed" under Oregon wage and hour laws.  The District bases this argument on the fact that the compensation District volunteers received was not "adequate consideration for the services performed" for the District.  ORS § 653.010(2).  The District argues that volunteer firefighters in effect donate their time and thus they do not have status as employees.  Jordan argues that a reasonable fact finder could conclude that the remuneration received by volunteer firefighters qualifies them as employees under Oregon law.  Jordan further argues that volunteers who receive "remuneration" may be employees for Title VII purposes, see Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211 (4th Cir. 1993), and that the same analysis applies here.

The Ninth Circuit has not established a bright line for determining whether and when an individual who works under the title of "volunteer" may be an "employee" for statutory purposes.  In Baker v. McNeil Island Corrections Center, 859 F.2d 124, 128 (9th Cir. 1988), the court considered whether a prison inmate working in the prison library was an employee for Title VII purposes.  The court focused on the degree of control the prison exercised over the inmate in his work assignments, and concluded that construing the facts most favorably to the plaintiff-inmate, an employment relationship may have existed under Title VII.  Id.  In Bono v. Eddings, No. CV 03-1398-BR, 2004 WL 1774537, at *4 (D. Or. Aug. 9, 2004), the district court held that there were factual disputes to be submitted to the trier of fact on whether volunteers who served the Willamina Fire District were employees under Title VII.  Id. (volunteers received workers' compensation coverage, $10,000 life insurance, reimbursement for expenses, uniforms, pagers, and sometimes college tuition, school books, housing, reimbursement for travel

Page 12 - FINDINGS AND RECOMMENDATION

expenses, among other things).

After reviewing caselaw from other circuits, this court notes that the following factors are consistently used to determine whether an individual was a volunteer or an employee:  (1) whether the benefits received by the individual constituted "wages or a salary or other compensation", see Graves v. Women's Professional Rodeo Ass'n, 907 F.2d 71, 73 (8th Cir. 1990); (2) the degree of control the putative employer had over the putative employee, see Baker, 859 F.2d at 128; see also Haavistola, 6 F.3d at 222, citing Garrett v. Phillips Mills, Inc., 721 F.2d 979, 982 (4th Cir. 1983); and (3) the specific statutory terms that define the nature of the relationship in the claims at issue.  The court will now apply these factors to defendants' motion for summary judgment on Jordan's fifth, sixth and seventh causes of action.

A.    Fifth Claim:  Whistleblowing

Jordan alleges that the District violated Oregon's whistleblowing law.  The District argues that because Jordan was a volunteer and not an employee, he does not fall within coverage of the law.  Under the whistleblowing law, an employee is "a person employed by or under contract with: (a) The state or any agency of or political subdivision in the state."  ORS § 659A.200(2)(a).  The District argues that the word "employee" in this law must be construed to apply only to persons who render services for a public employer in exchange for wages or salary. Jylha v. Chamberlain, 168 Or. 171, 175-76 (1942).  Jordan argues that the term "employ", unless the context requires otherwise, mean "to suffer or permit to work but does not include voluntary or donated services performed for no compensation or without expectation or contemplation of compensation as the adequate consideration for the services performed for a public employer. . ." ORS § 653.010(2).

This court is not convinced that the District's narrow interpretation of the term

"employee" based on a different statute (the Employer's Liability Act) construed in a case more than sixty years ago should guide our analysis.  Rather, utilizing the statutory language provided in the Oregon Revised Statutes, Title 51: Labor and Employment, a reasonable fact finder could determine that the District permitted Jordan to work for the District, that he provided services as directed by the District, and that he received some compensation for the services he provided. Whether the compensation was adequate to remove Jordan from the class of volunteers is a question of fact for the jury.  See, e.g., Haavistola, 6 F.3d at 221-22 (explaining that where compensation is not defined by statute or case law, the district court must leave to a fact finder the conclusion as to whether the benefits received represent significant remuneration); see also Schaff v. Ray's Land and Sea Food Co., Inc., 334 Or. 94, 101, 103 n.5 (2002) (en banc) (finding that the issue of employment status must be submitted to the trier of fact when the facts are disputed).  Public policy also supports Jordan's argument that Oregon's whistleblower law was intended to provide protection to volunteers in addition to more conventional employees. Because the District has failed to provide sufficient evidence that Oregon's whistleblower law cannot apply to Jordan, summary judgment on Jordan's fifth claim should be denied.

 B.  Sixth Claim:  Oregon Safe Employment Act

 Jordan alleges the District violated the Oregon Safe Employment Act ("OSE Act"), ORS § 654.001 et seq.  The District argues that the OSE Act does not apply to Jordan because he was a volunteer and not an employee, again citing Jylha.

 The purpose of the OSE Act "is to assure as far as possible safe and healthful working conditions for every working man and woman in Oregon, to preserve our human resources and to reduce the substantial burden, in terms of lost production, wage loss, medical expenses, disability compensation payments and human suffering, that is created by occupational injury

Page 14 - FINDINGS AND RECOMMENDATION

and disease." ORS § 654.003. Under the OSE Act, an employee is defined as "any individual, including a minor whether lawfully or unlawfully employed, who engages to furnish services for remuneration, financial or otherwise, subject to the direction and control of an employer." ORS § 654.005(4).[6] Jordan may be considered an employee under this statute because he was engaged to furnish services to the District, he received financial and other remuneration from the District for the services he performed, see, e.g., Youth Care Services, Inc. v. Employment Division, 91 Or. App. 145, 148 (1988) (reimbursement for expenses is remuneration), and he was under the direction and control of the District when he was responding to emergencies and attending training sessions. Once again, public policy also supports inclusion of volunteers such as Jordan under the protections of this statute. Because the District has failed to provide sufficient evidence that the OSE Act cannot apply to Jordan, summary judgment on Jordan's sixth claim should be denied.

      C.      <u>Seventh Claim: Wrongful Discharge</u>

      Jordan alleges that he was wrongfully discharged by the District. Oregon courts recognize two circumstances that implicate the tort of wrongful discharge: (1) discharge for fulfilling a societal obligation or public duty; and (2) discharge for exercising a job-related right of important public interest. <u>Draper v. Astoria School Dist. No. 1C</u>, 995 F. Supp. 1122, 1127 (D. Or. 1998). A "societal obligation or public duty" may include serving on jury duty, <u>Nees v. Hocks</u>, 272 Or. 210 (1975), while "exercising a job related right of important public interest" includes resisting sexual harassment, <u>Holien v. Sears, Roebuck and Co.</u>, 298 Or. 76 (1984) and

_____

    [6]The court notes that the District failed to cite the definition of "employee" under this statute and instead relied on its argument from <u>Jylha</u> that this court has already found unpersuasive.

filing a worker's compensation claim.  See Brown v. Transcom Lines, 284 Or. 597 (1978).

The District argues that because Jordan was not financially dependant on the District, the tort of wrongful discharge is not available to him.  The District points out that no Oregon case has ever allowed a volunteer to bring a wrongful discharge claim.  Jordan argues that the District over-emphasizes the importance of the financial aspect of the relationship but that even if that were the correct focus, the District's ongoing payments to Jordan for service performed on its behalf creates a question of fact as to whether he was an employee.

Jordan argues that under Oregon law, the "right to control" test is used to determine whether an individual is an employee in a wrongful discharge claim.  See Cantua v. Creager, 169 Or. App. 81, 91 (Or. Ct. App. 2000) (viability of wrongful discharge claim turns on right to control test which determined employee status); see also ORS § 659A.001(4) (defining "employer" as one "reserving the right to control the means by which [] service is or will be performed").  Under federal law, the right to control test is also used to determine whether an employment relationship exists.  See Baker, 859 F.2d at 128.  The District does not argue–nor can it–that it did not control Jordan's actions when he was on duty performing emergency services or attending trainings in his role as a volunteer firefighter.  Because the District has failed to provide sufficient evidence that Jordan can not maintain a wrongful discharge claim against the District, summary judgment on Jordan's seventh claim should be denied.

Jordan's Claims Against Individual Defendants

The District argues that Jordan may not bring his state and common law claims against Gehrke and Enright in "their individual and official capacities."  Complaint at ¶10.  This court agrees.  Under ORS § 30.265(1), tort actions against public employees acting within the scope of their employment shall be "an action against the public body only."  Because Jordan has pled

Page 16 - FINDINGS AND RECOMMENDATION

that both Gehrke and Enright are sued in their official capacities, they are entitled to defense and

indemnity under ORS § 30.285 such that the District should be substituted as the only defendant.

ORS § 30.265(1).[7]  Defendants' motion for summary judgment on Jordan's state law claims

against Gehrke and Enright should be granted.

///

///

///

///

///

///

///

///

///

///

---

[7]Jordan concedes that he cannot pursue his pendent state law claims against the
individual defendants.  See Plaintiff's Response at 5.

Page 17 - FINDINGS AND RECOMMENDATION

CONCLUSION

For the reasons set forth above, this court recommends that defendants' motion for summary judgment on plaintiff's claims under state law (No. 38) against defendants Gehrke and Enright should be granted.  Further, this court recommends granting defendants' motion for summary judgment (No. 38) as to plaintiff's second and fourth claims.  Defendants' motion for summary judgment (No. 38) as to plaintiff's third, fifth, sixth and seventh claims should be denied.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due January 26, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 12th day of January, 2007.


  /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge